**STATE of Missouri, Respondent,**

v.

**Timothy SCHOLL, Appellant.**

**No. ED 82159.**

Missouri Court of Appeals, Eastern District, Division Four.

June 17, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 13, 2003.

Application for Transfer Denied Sept. 30, 2003.

---

Albert C. Lowes, Cape Girardeau, MO, for appellant.

H. Morley Swingle, Julie A. Hunter (co-counsel), Jackson, MO, for respondent.

## OPINION

GLENN A. NORTON, Judge.

Timothy Scholl appeals his convictions for driving while intoxicated and for failing to drive on the right half of the roadway. We affirm the DWI conviction and reverse the conviction for driving on the wrong side of the road.

## I. BACKGROUND

Scholl was at a bachelor party where drinking was "going on." A friend saw Scholl leave the party alone and drive away in a truck around 10:00 p.m. The friend left five to ten minutes later, heading down the same road in the same direction. About fifteen or sixteen miles down the road, he found the truck off the road. The truck had hit a tree. Scholl was in the front seat of the truck. There was no one else in the truck or at the accident scene.

Sometime between 10:30 and 10:45, a resident in the neighborhood where the accident occurred arrived on the scene. He saw Scholl in the front seat unconscious. When he opened the driver's side door, two beer cans fell out and he could smell alcohol. The driver's side airbag had deployed, and there was blood on it and on Scholl.

The owner of the property where the accident occurred also came to the scene-by this time, Scholl was standing outside the truck. The property owner also detected an odor and said he could tell immediately that Scholl had been drinking. Scholl wanted to leave, so the owner helped him up the embankment to his house. When Scholl noticed a state trooper car coming up the road—they had received a call to respond to the accident about 10:30 or 10:45—he cursed at the owner for having "turned him in" and ran away.

After the troopers visited the scene of the accident, they went to the property owner's house. He told the troopers which direction Scholl had run. The troopers found Scholl hiding under a truck at a nearby home. Scholl refused to come out until they threatened to send in the police dog. One of the troopers observed that Scholl's speech was slurred, his breath smelled of intoxicant, he was unsteady on his feet and he appeared extremely intoxicated and agitated. Scholl refused to submit a blood sample, and when told he would still be charged with a DWI, School said he would beat that charge. Scholl's uncooperative attitude and injuries prevented the troopers from performing field sobriety tests.

Scholl was arrested, and a search warrant was obtained to take his blood sample. Scholl moved to quash the search warrant and to suppress the evidence relating to the blood sample, which showed his blood alcohol content over the legal limit. The trial court ultimately denied the motion. The parties stipulated to submit the case on the transcripts from the motion hearings. The court found Scholl guilty of driving while intoxicated and fail-

ing to drive on the right half of the roadway. Scholl appeals the denial of the motion to quash and to suppress the evidence and challenges the sufficiency of the evidence on his convictions.

## II. DISCUSSION

█ On a challenge to the sufficiency of the evidence, we will determine only whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. *State v. Thurston*, 84 S.W.3d 536, 538 (Mo.App. S.D.2002) (citing *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)). All evidence favorable to the verdict is accepted as true, as well as reasonable inferences therefrom, while contrary evidence and inferences are disregarded. *Thurston*, 84 S.W.3d at 538. We defer to the trial court's determinations of witness credibility and weight of the evidence. *State v. O'Toole*, 83 S.W.3d 622, 628 (Mo.App. E.D.2002).

### A. Driving While Intoxicated

"A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." Section 577.010.1 RSMo 2000.[1] "Operates" is defined as "physically driving or operating a motor vehicle." Section 577.001.1. Scholl contends that there is no evidence that he was "operating" a vehicle or that he was doing so while "intoxicated." We disagree.

Scholl relies on *State v. Thurston*, where the Southern District held that a defendant discovered in the passenger seat of a car was not "operating" that vehicle. 84 S.W.3d at 538. In that case, there was no evidence that the defendant was ever seen behind the wheel or driving the car, and there was no evidence that the car had

been operated. The court found that evidence insufficient under the reasonable doubt standard to prove that the defendant was "physically driving or operating a motor vehicle." *Id.*

█ Here, there is sufficient testimony from which it is reasonable to infer that Scholl was driving. Scholl was seen driving away from the party in his truck alone and, less than thirty minutes later, was found a short distance down the road alone in the front seat of the truck, which had struck a tree and deployed the driver-side airbag. Scholl suggests we infer from the evidence that, in that short time between leaving the party and being found, he switched drivers with some unknown person along the road, who, after crashing Scholl's truck into a tree, positioned Scholl to appear to have been the driver and fled before anyone arrived. While this inference is not factually impossible, we cannot say that it is unreasonable to instead infer that Scholl was driving up to and at the time of the accident.

█ There is also sufficient evidence from which it is reasonable to infer that Scholl was intoxicated while he was driving the truck. Intoxication may be proven by any witness who had a reasonable opportunity to observe the defendant's physical condition, and intoxication is usually evidenced by unsteadiness on the feet, slurred speech, lack of body coordination and impaired motor reflexes. *State v. Corum*, 821 S.W.2d 890, 891 (Mo.App. S.D. 1992). The first witnesses were on the accident scene within fifteen minutes. They observed that Scholl was unconscious and they smelled the odor of alcohol; one witness could tell immediately that Scholl had been drinking. When the state trooper found Scholl a short time thereafter, he determined that Scholl was intoxicated.

---

1. All statutory references are to RSMo 2000.

Scholl refused to submit to a blood sample.[2] These observations are sufficient to establish that Scholl was intoxicated. *See, e.g., State v. Cross,* 34 S.W.3d 175, 177–78, 184 (Mo.App. W.D.2000) (evidence that defendant found lying across the front seat of a car containing two empty beer bottles and that defendant had strong odor of intoxicants about him, watery bloodshot eyes, slurred speech, and uncertain balance sufficient to support conviction for DWI); *see also Corum,* 821 S.W.2d at 891 (conviction supported by officer's observations of defendant's condition and actions, officer's opinion that defendant was intoxicated and defendant's refusal to submit to breath test).

▮ Scholl argues that the time of driving was too remote from the time he was determined to be intoxicated to support an inference of intoxication while driving. Cases cited by Scholl in support of this contention, however, are not on point. For instance, in *State v. Block,* the defendant was determined to be intoxicated when the officers found him at home two hours and twenty minutes after the accident. 798 S.W.2d 213, 215–16 (Mo.App. W.D.1990); *see also State v. Liebhart,* 707 S.W.2d 427, 429 (Mo.App. W.D.1986) ("no evidence whatsoever as to the time of the accident or the interval between its occurrence and the officer's arrival on the scene"); *State v. Dodson,* 496 S.W.2d 272, 273 (Mo.App. W.D.1973) (defendant determined intoxicated at home forty-five minutes after accident); *Domsch v. Director of Revenue,* 767 S.W.2d 121, 123 (Mo.App. W.D.1989) (defendant determined intoxicated at restaurant one hour and forty minutes after accident). Here, evidence of Scholl's intoxication at the accident scene within fifteen minutes of the accident and a short distance from the accident scene shortly thereafter supports an inference that his condition was the same at the time of the accident. *See State v. Avellone,* 792 S.W.2d 54, 54 (Mo.App. E.D.1990) (defendant determined intoxicated at scene twenty-five minutes after accident).

There is sufficient evidence from which a reasonable trier of fact might have found Scholl guilty beyond a reasonable doubt of driving while intoxicated.

Point I is denied.

▮ Scholl also argues that the court erred in refusing to quash the search warrant to obtain his blood sample and to suppress the evidence derived therefrom showing his blood alcohol content above the legal limit. Where, as here, the conviction is supported by sufficient other evidence of intoxication, evidence of the defendant's blood alcohol level derived from a chemical test is cumulative. *State v. Wiggins,* 841 S.W.2d 752, 753 (Mo.App. E.D.1992). Therefore, any error in refusing to suppress the blood sample in this case was harmless beyond a reasonable doubt. *See State v. Kilgore,* 771 S.W.2d 57, 62 (Mo. banc 1989); *State v. Williams,* 717 S.W.2d 561, 565 (Mo.App. E.D.1986).

Points III and IV are denied.

## B. Failing to Drive on Right Half of Road

▮ Section 304.015.2 provides that "[u]pon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway," except in certain situations not at issue here. Scholl contends that there was no evidence

---

**2.** While Scholl claims that the warrant for his blood sample issued after such refusal was illegally obtained and that the sample should be suppressed—an issue we do not reach here—it is undisputed that Scholl's refusal is admissible evidence. *See* section 577.041.1.

that he failed to drive on the right half of the roadway.[3] We agree.

The evidence showed that Scholl was travelling south on Route C and that his truck was found in an embankment off of the west side of the roadway. The only reasonable inference from this evidence is that Scholl was driving on the right half of the road, at least at the point that he drove off the highway, and there is no evidence that Scholl drove on the wrong half of the road at any other time.

The State argues that by driving off the roadway into an embankment, Scholl must be guilty of failing to drive on the right half of the road. The Supreme Court rejected a similar argument when determining whether, under this statute, a defendant in a negligence suit had a duty to avoid driving off the road and into the plaintiff.

> Appellant argues that [section 304.015.2] makes driving off the roadway on the right side of the highway a violation of the rules of the road just as it makes driving to the left of the center of the roadway. The obvious purpose of this statute is to change the common law of the road that one has a right to travel on either side of the highway when no one is coming in the opposite direction.

*Skiles v. Schlake*, 421 S.W.2d 244, 246–47 (Mo.1967).

Nothing in *this* statute makes Scholl's conduct a crime. Of the handful of opinions involving convictions under section 304.015.2 in which the underlying facts were published, every defendant had driv-

en on the wrong half of the road. *See generally State v. Galazin*, 58 S.W.3d 500 (Mo. banc 2001) (crossed center line); *State v. McHaffie*, 762 S.W.2d 875 (Mo. App. S.D.1989) (crossed center line); *State v. Barker*, 490 S.W.2d 263 (Mo.App.1973) (crossed center line); *see also generally State v. Voyles*, 823 S.W.2d 143 (Mo.App. E.D.1992) (drove on center line of two westbound lanes); *and see State v. Chamberlin*, 872 S.W.2d 615, 617 (Mo.App. W.D. 1994) (noting that, while not charged thereunder, driving on center line with car in both right and left half of road is prohibited under section 304.015.2).

Driving off the highway from the right hand side of the road as Scholl did here might support a criminal charge under *other* statutes. For instance, section 304.012.1 mandates that motorists drive in a "careful and prudent manner" and "exercise the highest degree of care." Violation of that section is a misdemeanor. Section 304.012.2. But that crime was not charged, and the State must prove the charges it filed. *State v. Keeler*, 856 S.W.2d 928, 931 (Mo.App. S.D.1993).

There is not sufficient evidence from which a reasonable trier of fact could have found Scholl guilty beyond a reasonable doubt of failing to drive on the right half of the roadway.

Point II is granted.

### III. CONCLUSION

The judgment convicting Scholl of driving while intoxicated is affirmed, and the judgment convicting him of failing to drive

---

3. Scholl also contend that there was no evidence that the highway was "of sufficient width." By taking judicial notice of Missouri's official highway map, we find that Route C in Cape Girardeau County is a two-

lane highway of sufficient width for drivers to comply with section 304.015.2. *See State v. Hammons*, 964 S.W.2d 509, 513–14 (Mo.App. W.D.1998).

**310**

on the right half of the roadway is reversed.

WILLIAM H. CRANDALL, P.J. and SHERRI B. SULLIVAN, J., concurring.